UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

RANDY LANGLEY,

Plaintiff,

v.

E. GARCIA; G. COOK,

Defendants.

Case No. 1:16-cv-01299-NONE-JLT (PC)

**FINDINGS AND RECOMMENDATIONS TO DENY DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

(Doc. 52)

21-DAY DEADLINE

**ORDER DENYING PLAINTIFF'S MOTION FOR MISCELLANEOUS RELIEF**

(Doc. 56)

Randy Langley alleges Deputy Garcia and Deputy Cook subjected him to excessive force in violation of the Eighth and Fourteenth amendments. (Doc. 17.) Before the Court is Defendants' motion for summary judgment. (Doc. 52.) Defendants argue summary judgment is appropriate because the uncontested facts show they did not use excessive force against Plaintiff and they are entitled to qualified immunity. (Doc. 52-1.) Plaintiff has filed an opposition to Defendants' motion (Doc. 54), to which Defendants have filed a reply (Doc. 55).[1] For the reasons set forth below, the Court recommends that Defendants' motion be denied.

///

[1] Plaintiff filed a document titled, "Motion of Rebuttal," on May 14, 2020. (Doc. 56.) To the extent Plaintiff seeks to file a sur-reply, the Court denies the motion as unnecessary. The Court discusses the other requests for relief in the motion in section IV.B, *infra*.

**I. LEGAL STANDARD**

Summary judgment is appropriate when the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party "initially bears the burden of proving the absence of a genuine issue of material fact." *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). The moving party may accomplish this by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations …, admissions, interrogatory answers, or other materials," or by showing that such materials "do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A), (B). When the non-moving party bears the burden of proof at trial, "the moving party need only prove that there is an absence of evidence to support the non-moving party's case." *Oracle Corp.*, 627 F.3d at 387 (citing *Celotex*, 477 U.S. at 325); *see also* Fed. R. Civ. P. 56(c)(1)(B).

Summary judgment should be entered against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *See Celotex*, 477 U.S. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 322–23. In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for the entry of summary judgment … is satisfied." *Id.* at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact does exist. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In attempting to establish the existence of a factual dispute, the opposing party may not rely upon the allegations or denials of his pleadings but is required to tender evidence of specific facts in the form of affidavits or admissible discovery material in support of its contention. *See* Fed. R. Civ. P. 56(c)(1); *Matsushita*, 475 U.S. at 586 n.11; *Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 773 (9th Cir.

2002) ("A trial court can only consider admissible evidence in ruling on a motion for summary judgment."). The opposing party must demonstrate that the fact in contention is material, i.e., that it might affect the outcome of the suit under governing law, *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., that the evidence is such that a reasonable jury could return a verdict for the non-moving party, *see Anderson*, 477 U.S. at 250; *Wool v. Tandem Computs. Inc.*, 818 F.2d 1433, 1436 (9th Cir. 1987).

In attempting to show a factual dispute, the opposing party need not prove a material fact conclusively in her favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv.*, 809 F.2d at 631. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" *Matsushita*, 475 U.S. at 587 (citations omitted).

"In evaluating the evidence to determine whether there is a genuine issue of fact," the court draws "all inferences supported by the evidence in favor of the non-moving party." *Walls v. Cent. Contra Costa Cty. Transit Auth.*, 653 F.3d 963, 966 (9th Cir. 2011). However, the opposing party must still produce a factual predicate from which the inference may be drawn. *See Richards v. Nielsen Freight Lines*, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), *aff'd*, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts.... Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587 (citation omitted).

## II. EVIDENTIARY MATTERS

### A. Plaintiff's Evidence

Defendants provided Plaintiff with the requirements for opposing a motion for summary judgment under Federal Rule of Civil Procedure 56. (Doc. 52 at 2.) Nevertheless, Plaintiff did not submit evidence in support of his opposition to Defendants' motion; and, he failed to reproduce the itemized facts in Defendants' statement of undisputed facts (Doc. 52-2) and to admit or deny

those facts, pursuant to Local Rule 260. As a result, Defendants' proffered facts are accepted as true, except where they are brought into dispute by Plaintiff's verified complaint, opposition or his deposition testimony. *See Jones v. Blanas*, 393 F.3d 918, 923 (9th Cir. 2004) (citations omitted). Because Plaintiff is *pro se* and attests under penalty of perjury that the contents of his complaint and opposition are true and correct (Doc. 17 at 5, Doc. 54 at 3), the Court considers as evidence those parts of the complaint and opposition that are based on Plaintiff's personal knowledge. *See id.* (citations omitted). For the same reasons, the Court also considers as evidence those parts of Plaintiff's sworn deposition testimony that are based on his personal knowledge.

The Court does not consider the letter attached to Plaintiff's opposition (Doc. 54 at 4) because it is hearsay and not admissible in evidence in its current form. Fed. R. Evid. 801-802. The letter is also not probative with respect to the issues before the Court on summary judgment. *See* Fed. R. Evid. 401.

**B. Defendants' Videos**

In support of their motion, Defendants lodged seven videos of the incident at issue in this case. (*See* Doc. 58.) The existence of the videos does not change the standards for summary judgment: the Court will draw all reasonable inferences in favor of Plaintiff. *See Blankenhorn v. City of Orange*, 485 F.3d 463, 468 n.1 (9th Cir. 2007). However, if the videos "blatantly contradict" a party's account, "so that no reasonable jury could believe it," the Court "should not adopt that version of the facts for purposes of ruling on" Defendants' motion. *Scott v. Harris*, 550 U.S. 372, 380 (2007); *see also Vos v. City of Newport Beach*, 892 F.3d 1024, 1028 (9th Cir. 2018) ("record is viewed in the light most favorable to the nonmovants, … so long as their version of the facts is not blatantly contradicted by … video evidence") (citations omitted). The Court does not find that the video footage blatantly contradicts Plaintiff's version of events.[2] Therefore, the Count draws all reasonable inferences from the videos in Plaintiff's favor.

///

[2] The Court finds the videos of limited utility for summary judgment purposes. Only two of the videos capture the subject incident. In one, the relevant interactions between Plaintiff and Defendants are largely blocked by a door and another deputy. In the other, the images of the incident are unclear because the camera is too far away. "Not surprisingly, given these limitations, the parties draw different inferences from the video[s] regarding what actually occurred during the incident." *Blankenhorn*, 485 F.3d at 468. (*Compare* Doc. 52-1 at 7, 13 *with* Doc. 54 at 1-2.)

## III. SUMMARY OF FACTS

At the times relevant to this case, Mr. Langley was a pretrial detainee at the Tulare County Adult Pre-Trial Facility. Defs.' Separate Statement of Undisputed Facts ("SUF") ¶ 1 (Doc. 52-2). On October 15, 2015, Deputies Cook and Garcia responded to Plaintiff's cell because he refused to comply with an order to get ready for court. SUF ¶ 3. Garcia then instructed Plaintiff to come down from his bunk and get ready, but Plaintiff again refused. *Id.* ¶ 5. After several commands, Plaintiff complied, and Garcia handcuffed him. *Id.*

Garcia grabbed Plaintiff's arm and assisted him out his cell door. SUF ¶ 6. According to Defendants, Plaintiff then pulled away from Garcia. *Id.* According to Plaintiff, he did not resist. Pl.'s Dep. 24:20-25:5 (Doc. 52-6). Garcia pushed Plaintiff to the wall. SUF ¶ 6. According to Defendants, Garcia then tried to get Plaintiff to walk, but Plaintiff refused. *Id.* ¶ 7. According to Plaintiff, he did not resist, and Garcia punched him while he was up against the wall. Pl.'s Dep. 20:2-21:8, 24:20-25:5; Pl.'s Compl. 3 (Doc. 17); *see also* Pl.'s Opp'n 1-2 (Doc. 54).

Garcia and Cook took Plaintiff to the ground, with Cook using a leg sweep. SUF ¶ 7. According to Plaintiff, while on the ground, Garcia punched him in the head several times with a closed fist. Pl.'s Compl. 3; Pl.'s Dep. 21:9-22; *see also* Pl.'s Opp'n 1-2. According to Defendants, they did not punch Plaintiff at any point during the incident. SUF ¶ 11. Garcia and Cook then assisted Plaintiff to his feet and walked him to the classification cell. *Id.* ¶ 9.

As a result of the incident, Plaintiff suffered swelling near his left eye and a cut on his bottom lip. *Id.* ¶ 12. According to Plaintiff, he also sustained an injury to his left wrist. Pl.'s Compl. 4; Pl.'s Dep. 33:8-15.

## IV. DISCUSSION

### A. Defendants' Motion for Summary Judgment

#### i. <u>Excessive Force under the Fourteenth Amendment</u>

To determine whether a pretrial detainee's conditions of confinement satisfy the Constitution, courts look to the substantive due process component of the Fourteenth Amendment. *See, e.g., Jones*, 393 F.3d at 931-32. "[P]re-adjudication detainees retain greater liberty protections than" individuals detained for a criminal conviction. *Id.* at 932 (citation

omitted). Thus, "when the state detains an individual on a criminal charge, that person, unlike a criminal convict, may not be punished prior to an adjudication of guilt in accordance with due process of law." *Id.* at 931-32 (internal quotation marks and citation omitted). Moreover, individuals have a fundamental right to personal security, "[a]nd that right is not extinguished by lawful confinement." *Youngberg v. Romeo*, 457 U.S. 307, 315 (1982) (citations omitted). Therefore, "the Due Process Clause protects a pretrial detainee from the use of excessive force that amounts to punishment." *Graham v. Connor*, 490 U.S. 386, 395 n.11 (1989).

To prove that an officer's use of force was constitutionally excessive, "a pretrial detainee must show … that the force purposely or knowingly used against him was objectively unreasonable." *Kingsley v. Hendrickson*, 576 U.S. 389, 396-97 (2015). Unlike prisoners in the Eighth Amendment context, under the Fourteenth Amendment, pretrial detainees need not establish the subjective state of mind of the defendants, i.e., they need not "prove that the use of force … was applied maliciously and sadistically to cause harm." *Id.* at 400 (citation omitted).

"[O]bjective reasonableness turns on the facts and circumstances of each particular case." *Id.* at 397 (internal quotation marks and citation omitted). "A court must make this determination from the perspective of a reasonable officer on the scene, including what the officer knew at the time, not with the 20/20 vision of hindsight." *Id.* (citation omitted). To determine whether a use of force is reasonable, courts may consider "the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting." *Id.* Although the extent of injury is a factor that may be considered, the absence of significant injury is not determinative. *See Hudson v. McMillian*, 503 U.S. 1, 4, 7 (1992) (holding that serious injury is not necessary to establish excessive force under the Eighth Amendment).

ii. <u>Analysis</u>

Viewed in the light most favorable to Plaintiff, the facts are these: Initially, Plaintiff resisted an order to get ready for court, but then he complied, allowed himself to be handcuffed, and exited his cell with Deputy Garcia. Although Plaintiff was no longer resisting, Garcia began

punching him. Garcia and Deputy Cook then took him to the ground, with Cook using a leg sweep, as Garcia continued to punch him.

Based on these facts, Defendants' use of force was objectively unreasonable. For one, the relationship between the need for force and the amount of force favors Plaintiff, since there was *no* need for force. Plaintiff was handcuffed and not resisting; thus, there were no security issues or threats that a reasonable officer would perceive. Under these circumstances, taking Plaintiff to the ground and punching him is obviously unreasonable and excessive.

Defendants argue that Plaintiff cannot prove excessive force because the injuries he sustained were *de minimis*. (Doc. 52-1 at 13-14.) Defendants point to Plaintiff's "minor and temporary" physical injuries, which included only "a bump near his left eye and a cut on his inner bottom lip."[3] (*Id.* at 8, 13.)

Defendants conflate minor injuries with *de minimis* use of force. Under the Eighth Amendment, the "prohibition of 'cruel and unusual' punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force" *Hudson*, 503 U.S. at 10. Although the extent of injuries should be considered in determining whether a use of force was *de minimis*, *see id.*, the amount of force and the injuries sustained are distinct concepts, *see Wilkins v. Gaddy*, 559 U.S. 34, 38-39 (2010). Though "a push or shove that causes no discernible injury" is a *de minimis* use of force, *id.* at 38 (internal quotation marks and citations omitted), it is clear that taking someone to the ground and punching him in the head is not a *de minimis* use of force, regardless of whether Plaintiff's injuries were minor. *See Stevenson v. Jones*, 254 F. Supp. 3d 1080, 1091-92 (N.D. Cal. 2017). As the Supreme Court has held, under the Eighth Amendment, excessive force does not depend on whether "significant injury is evident." *Id.* at 9. The same is true in the Fourteenth Amendment context. *See Bustamante v. Superior Court of California*, No. 4:11-cv-03492-SBA, 2012 WL 2150242, at *2 (N.D. Cal. 2012) ("Eighth Amendment's malicious and sadistic standard … provides a floor for the level of protection that pretrial detainees … must receive under the Fourteenth Amendment").

Defendants' argument is more properly characterized as one of probability, i.e., whether it

[3] As noted in section III, *supra*, Plaintiff also alleges an injury to his wrist.

is probable that the amount of force Defendants allegedly used would cause the minor injuries Plaintiff sustained. Such issues involve "weighing the evidence and determining credibility, which are jury functions." *Barrow v. San Francisco Sheriff's Dep't*, No. 5:17-cv-04483-VKD, 2019 WL 3554367, at *6 (N.D. Cal. 2019).

The matter before the Court comes down to disputes of material fact regarding (1) the amount of force used by Defendants (2) and whether Plaintiff was resisting immediately before or during the use of such force. Under Plaintiff's version of events, the amount of force was objectively unreasonable. Under Defendants' version, the amount of force may have been reasonable.[4] Thus, "[w]hether or not the evidence in the record establishes liability … depends on the resolution of [the] disputed questions of fact and determinations of credibility, as well as on the drawing of inferences, all of which are manifestly the province of a jury."[5] *Santos v. Gates*, 287 F.3d 846, 852 (9th Cir. 2002) (citation omitted). Summary judgment is thus inappropriate.

Defendants also argue that they are entitled to qualified immunity. (Doc. 52-1 at 20-22.) Defendants only address the first prong of the qualified immunity analysis: whether Defendants violated Plaintiff's constitutional rights. (*See id.* at 22.) Defendants do not address the second prong: whether the rights were clearly established at the time of the subject incident. *See Saucier v. Katz*, 533 U.S. 194, 201 (2001).

As explained above, taken in the light most favorable to Plaintiff, the facts show that Defendants violated Plaintiff's due process rights by taking him to the ground and punching him when he was not resisting or posing a security threat. Such rights were clearly established in 2015. "It has been clearly established since at least 2007 that an officer may not punch an arrestee without provocation." *Robinson v. Cty. of Shasta*, 384 F. Supp. 3d 1137, 1155 (E.D. Cal. 2019). Defendants are therefore not entitled to qualified immunity at this juncture.

///

[4] The Court does not decide the matter here.

[5] Defendants, for example, point to discrepancies between Plaintiff's operative complaint and his prior complaints and deposition testimony as reason to discount Plaintiff's version of events. (*See* Doc. 52-1 at 6, 8, 13.) Construing Plaintiff's verified complaint as a declaration, the Court does not find the discrepancies to be so significant to warrant the exclusion of the declaration as a "sham." *See Messick v. Horizon Indus. Inc.*, 62 F.3d 1227, 1231 (9th Cir. 1995). The declaration and testimony, therefore, can create triable issues of fact. *See id.* The discrepancies may still be relevant to credibility, but this is the province of a jury.

**B. Plaintiff's Motion for Miscellaneous Relief**

On May 14, 2020, Plaintiff filed a document titled, "Motion of Rebuttal to Defendants [sic] Reply to Opposition of Defendants [sic] Motion for Summary Judgment." (Doc. 56.) In the motion, Plaintiff requests (1) judgment as a matter of law pursuant to Federal Rule of Civil Procedure 50, (2) a telephonic conference "for mediation … to settle [this] case," and (3) the appointment of counsel. (*Id.* at 2-5.) Plaintiff requests the appointment of counsel on the grounds that he has *in forma pauperis* status, his ability to conduct legal research is limited, and the COVID-19 pandemic has "suspended" "local resources." (*See id.* at 4.)

First, judgment as a matter of law pursuant to Rule 50 is clearly not appropriate because this case has not proceeded to trial. *See* Fed. R. Civ. P. 50(a). Furthermore, as described in the previous section, this case involves factual disputes that require resolution by a jury. The Court therefore denies this request.

Second, if Plaintiff's request for "mediation" is a request for a settlement conference, the Court is open to conducting such a conference, but only if the parties agree that it would be productive. The Court will not conduct a settlement conference if it would be a waste of resources. Therefore, the Court denies this request without prejudice to the parties filing a joint stipulation/request for a settlement conference.

Lastly, parties do not have a constitutional right to appointed counsel in section 1983 actions, and the Court appoints voluntary counsel only in "exceptional circumstances." *Rand v. Rowland*, 113 F.3d 1520, 1525 (9th Cir. 1997) (citations omitted). To determine whether "exceptional circumstances exist," the Court "evaluate[s] both the likelihood of success on the merits [and] the ability of the petitioner to articulate his claims pro se in light of the complexity of the legal issues involved." *Id.* (internal quotation marks and citations omitted).

The grounds on which Plaintiff requests the appointment of counsel do not qualify as "exceptional circumstances" under *Rand*. Even if Plaintiff is proceeding *in forma pauperis* and is not well versed in the law, and even if his allegations, if proven at trial, would entitle him to relief, his case is not extraordinary. The Court is faced with similar cases almost daily. In addition, the Court does not, at this stage, find that Plaintiff cannot adequately articulate his

claims. Accordingly, the Court denies Plaintiff's request for the appointment counsel without prejudice to refiling at a later date.

## V.    CONCLUSION

For the reasons set forth above, the Court **DENIES** Plaintiff's motion for miscellaneous relief (Doc. 56) and **RECOMMENDS** that Defendants' motion for summary judgment (Doc. 52) be **DENIED**.

The Findings and Recommendations will be submitted to the United States District Judge assigned to this case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). **Within 21 days** of the date of service of the Findings and Recommendations, Defendants may file written objections with the Court. The document should be captioned, "Objections to Magistrate Judge's Findings and Recommendations." Defendants' failure to file objections within the specified time may result in waiver of rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **July 26, 2020**                              **/s/ Jennifer L. Thurston**
                                                                   UNITED STATES MAGISTRATE JUDGE