# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RANDY LANGLEY,<br><br>      Plaintiff,<br><br>v.<br><br>E. GARCIA, et al.,<br><br>      Defendants. | Case No.: 1:16-cv-01299-BAK (HBK)<br><br>PRETRIAL ORDER<br><br>**Deadlines**:<br><br>Motions *in Limine* Filing: **10/14/2022**<br>Oppositions to Motions *in Limine*: **10/21/2022**<br>Replies to Opposition: **10/31/2022**<br>Hearing on Motions *in Limine*: **11/15/2022**<br>Trial Submissions: **10/31/2022**<br><br>Jury trial: **November 15, 2022 at 8:30 a.m.**<br>Robert E. Coyle United States Courthouse,<br>Courtroom 6; 2-3 days estimate |

Plaintiff Randy Langley is a state prisoner proceeding *pro se* and *in forma pauperis* in this civil rights action brought pursuant to 42 U.S.C. § 1983 against Defendants E. Garcia and G. Cook, asserting excessive force claims arising under the Eighth and Fourteenth Amendments to the United States Constitution, occurring while Plaintiff was a pretrial detainee.

**INTRODUCTION**

On May 12, 2022, the court conducted a final pretrial conference by telephone. Plaintiff Randy Langley appeared *pro se*; Amy I. Myers appeared as counsel for Defendants G. Cook and E. Garcia. Shortly thereafter, due to concerns regarding Plaintiff's then-temporary housing at Wasco State Prison (*see* Doc. No. 90), the Court vacated the August 3, 2022, trial date and postponed issuance of the final pretrial order until Plaintiff's placement in a permanent California Department of

1

Corrections and Rehabilitation (CDCR) facility.  (Doc. No. 91).  Counsel for Defendants was directed to file notice with the Court once Plaintiff was placed in permanent CDCR housing and a discovery packet was delivered to Plaintiff.  (*Id*.).

On June 27, 2022, Defendants filed a status report advising Plaintiff had been assigned to the California Rehabilitation Center (CRC) and defense counsel would arrange for delivery of a duplicate discovery packet through the litigation coordinator at CRC.  (Doc. No. 92).  On July 11, 2022, Plaintiff filed a Notice of Change of Address reflecting his current address at CRC.  (Doc. No. 93).  In that same filing, Plaintiff expressed an interest in participating in a settlement conference.  (*Id*.).  On July 28, 2022, the Court issued a minute order directing defense counsel to file a status report no later than August 5, 2022, concerning (1) whether a duplicate discovery packet was provided to Plaintiff; (2) available trial dates; and (3) whether Defendants believed scheduling a settlement conference would be productive.  (Doc. No. 94).  On August 5, 2022, Defendants filed a status report indicating a duplicate discovery packet was mailed to Plaintiff at CRC on August 1, 2022, and a disk containing facility videos was mailed to the litigation coordinator at CRC on August 2, 2022. (Doc. No. 95 at 1-2).  Further, Defendants provided the Court with possible trial dates in October 2022 through February 2023. (*Id*. at 2).  Lastly, Defendants reported they did not believe a settlement conference would be productive.  (*Id.* at 3.)

Having considered the parties' objections and positions, the Court issues this pretrial order.

**A.    JURISDICTION/VENUE**

This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and 1343. In addition, the events giving rise to this action occurred in Visalia, California.  Accordingly, venue is proper in the United States District Court for the Eastern District of California.  *See* 28 U.S.C. § 1391.

**B.    JURY TRIAL**

The parties demanded a jury trial in this matter.  (*See* Doc. No. 27 [Defendants' Answer]; Doc. No. 71 [Defendants' Pretrial Statement]; Doc. No. 77 [Plaintiff's Pretrial Statement].) The jury will consist of eight jurors.

**C.    UNDISPUTED FACTS**

Defendants assert the following facts are undisputed:

1. At the time of the events, Plaintiff was a pretrial detainee at the Tulare County Adult Pre-Trial Facility.
2. At the time of the events, Defendant E. Garcia and G. Cook were employed by the Tulare County Sheriff's Department.
3. On October 15, 2015, Defendants Garcia and Cook responded to Plaintiff's cell because Plaintiff refused to get ready for court.
4. Defendant Garcia instructed Plaintiff to come down from his bunk and get ready, but Plaintiff refused again.
5. After several commands, Plaintiff complied, and Defendant Garcia handcuffed him.
6. Defendant Garcia grabbed Plaintiff's arm and assisted Plaintiff out of his cell door.
7. Defendant Garcia pushed Plaintiff to the wall.
8. Defendants Garcia and Cook took Plaintiff to the ground, with Defendant Cook using a leg sweep.
9. Defendants Garcia and Cook then assisted Plaintiff to his feet and walked him to the classification cell.
10. Plaintiff suffered swelling near his left eye and a cut on his bottom lip.

(Doc. No. 71 at 3). Plaintiff did not identify any undisputed facts in his pretrial statement. (*See* Doc. No. 77).

**D.   DISPUTED FACTS**

Defendants assert the following facts are disputed:

1. Whether there was a need for the use of some force against Plaintiff because he had become aggressive and disruptive during an escort.
2. Whether the amount of force used was reasonably related to the need for that force.
3. Whether the absence of any serious injury resulting from the incident indicates that the force was applied in a good-faith effort to maintain or restore discipline and was not applied maliciously and sadistically to cause harm.
4. Whether the threat perceived by the responsible correctional deputies was significant.
5. Whether Defendants tempered the force that they used.

  6. The nature and extent of Plaintiff's injury.

  7. The amount of Plaintiff's compensatory damages, if any.

(Doc. No. 71 at 3-4).  Plaintiff did not identify any facts he believes to be disputed.  (*See* Doc. No. 77).

## E. DISPUTED LEGAL ISSUES

Neither party identified any disputed legal issue.

## F. DISPUTED EVIDENTIARY ISSUES/ MOTIONS *IN LIMINE*

The purpose of a motion *in limine* is to establish in advance of the trial that certain evidence should not be offered at trial.  "Although the Federal Rules of Evidence do not explicitly authorize *in limine* rulings, the practice has developed pursuant to the district court's inherent authority to manage the course of trials."  *Luce v. United States*, 469 U.S. 38, 40 n. 2 (1984); *Jonasson v. Lutheran Child and Family Services*, 115 F. 3d 436, 440 (7th Cir. 1997).  The Court will grant a motion *in limine*, and thereby bar use of the evidence in question, only if the moving party establishes that the evidence clearly is not admissible for any valid purpose.  *Id*.  The Court does not encourage the filing of motions *in limine* unless they are addressed to issues that can realistically be resolved by the court prior to trial and without reference to the other evidence which will be introduced by the parties at trial.

**In advance of filing any motion *in limine*, counsel SHALL meet and confer to determine whether they can resolve any disputes and avoid filing motions *in limine*.  Along with their motions *in limine*, the parties SHALL file a certification demonstrating counsel have in good faith met and conferred and attempted to resolve the dispute.  Failure to provide the certification may result in the Court refusing to entertain the motion.**

Any motions *in limine* must be filed with the Court no later than **October 14, 2022**.  The motion must clearly identify the nature of the evidence that the moving party seeks to prohibit the other side from offering at trial.  Any opposition to the motion must be served on the other party, and filed with the Court no later than **October 21, 2022,** with any reply due no later than **October 31, 2022**.  Upon receipt of any opposition briefs, the Court will notify the parties if it will hear argument on any motions *in limine* on the first day of trial.

////

4

**Plaintiff:**

Concerning disputed evidentiary issues, Plaintiff objects to the introduction of any prior or criminal history "as unrelated and violation of right to fair [and] unbiased trial of civil matter which Defendants are on trial for not myself." (Doc. No. 77 at 2). Plaintiff objects to the introduction of "Depositions of Lakeshia and Tavion[,] Lines 5 and 6 of Page 9 of Defendants Pre-Trial Statement, matter was inside of institution [and] neither w[]ere a party or witness" to the incident. (Doc. No. 77 at 3).

**Defendants:**

Defendants have identified the following disputed evidentiary issues:

1. Defendants will seek to impeach Plaintiff by presenting evidence of prior felony convictions and/or specific instances of conduct demonstrating a propensity to lie.

2. Defendants will also seek to impeach Plaintiff by presenting the deposition transcripts of Plaintiff's depositions taken August 27, 2019 by Tulare County Counsel, and March 14, 2017 by Longyear, O'Dea & Lavra, and Plaintiff's Responses to Defendants' Special Interrogatories.

3. Defendants will object to the testimony of any witnesses offered by Plaintiff, other than Plaintiff himself, as Plaintiff did not file a Pretrial Statement and identify any intended witnesses.

4. Should any incarcerated witnesses testify, Defendants will seek to impeach such witnesses by presenting evidence of prior felony convictions and/or specific instances of conduct demonstrating propensity to lie.

5. Defendants will object to any exhibits offered by Plaintiff to the extent such exhibits are unauthenticated hearsay for which there is no applicable hearsay exception.

6. Defendants will object to any discovery materials, declarations of the Defendants, and declarations of inmate witnesses offered by Plaintiff as admissible evidence. These materials may be used only to the extent permitted by the rules of evidence.

7. Without proof of an actual injury, Defendants will object to Plaintiff's claim for compensatory damages.

8. Without proof of an actual injury, Plaintiff's claim is limited to nominal damages.

9. In the absence of proof from a medical expert, Plaintiff lacks competent medical evidence to make out a prima facie case of whether he suffered any physical injury or mental harm as a result of the alleged use of force and retaliation. Plaintiff can testify as to what he experienced as a result of this incident; however, Plaintiff should be precluded from offering any opinions or inferences to be drawn from these records.

(Doc. No. 71 at 4-5.)

**G.   SPECIAL FACTUAL INFORMATION**

None.

**H.   RELIEF SOUGHT**

**Plaintiff**

Plaintiff seeks "$15 million in relief." (Doc. No. 77 at 4).

**Defendant**

Defendants Garcia and Cook seek judgment in their favor and costs incurred in this action.

**I.   POINTS OF LAW**

**Plaintiff**

Plaintiff did not identify any points of law in his pretrial statement. (*See generally* Doc. No. 77).

**Defendants**

Defendants identify the following Points of Law concerning Use of Force under the Eighth and Fourteenth Amendments:

1. The treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment. *Helling v. McKinney*, 509 U.S. 25, 31 (1993).

2. The Fourteenth Amendment protects pretrial trial detainees from the use of excessive force that amounts to punishment. *Graham v. Connor*, 490 U.S. 386, 395 (1989).

3. An inmate has the right to be free from cruel and unusual punishment, including physical abuse by correctional officers. *Hudson v. McMillian*, 503 U.S. 1, 5 (1992) (citing *Whitley*

*v. Albers*, 475 U.S. 312, 317 (1986)).

4. Where prison officials stand accused of using excessive force in violation of the Eighth Amendment, the core judicial inquiry is whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm. *Id*.

5. However, not every malevolent touch by a correctional officer gives rise to a federal cause of action. *Id*. at 9.

6. The Eighth Amendment's prohibition of cruel and unusual punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provide that the use of force is not of a sort repugnant to the conscience of mankind. *Id*. at 9-10.

7. In determining whether the use of force was wanton and unnecessary, the trier of fact should evaluate the need for the application of force, the relationship between that need and the amount of force used, the extent of any injury inflicted, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response. *Id*. at 7.

8. The Eighth Amendment excessive force standard examines *de minimis* uses of force, not *de minimus* injuries. *Oliver v. Keller*, 289 F.3d 623, 628 (9th Cir. 2002).

9. However, not every malevolent touch by a correctional officer gives rise to a federal cause of action. *Hudson*, 503 U.S. at 9. The absence of serious injury is relevant to the Eighth Amendment inquiry of whether the use of force was *de minimis*. *Id*. at 9-10.

10. Under the Fourteenth Amendment, a pretrial detainee must show that the force a prison official purposely or knowingly used against him was objectively unreasonable. *Kingsley v. Hendrickson*, 576 U.S. 389, 396-97 (2015).

11. Objective reasonableness turns on the perspective of a reasonable officer on the scene, including what the officer knew at the time, not with the 20/20 vision of hindsight. *Id.* at 307.

12. The use of force is a good-faith effort to maintain or restore discipline is a legitimate correctional goal. *Id*. at 397 (citing *Bell v. Wolfish*, 441 US. 520, 540, 547 (1979)).

13. The legitimate interests that stem from the government's need to manage the detention

facility must be considered, appropriately deferring to policies and practices that in the judgment of jail officials are needed to preserve internal order and discipline and to maintain institutional security. *Id*.

14. Potentially relevant considerations as to the reasonableness of force used include, but are not limited to: (1) the relationship between the need for the use of force and the amount of force used; (2) the extent of the plaintiff's injury; (3) any effort made by the officer to temper or to limit the amount of force; (4) the severity of the security problem at issue; (5) the threat reasonably perceived by the officer; and (6) whether the plaintiff was actively resisting. *Id*. (citing *Graham v. Connor*, 490 U.S. 386, 396 (1989)).

15. When, as here, the prisoner seeks compensatory damages, the inquiry into causation must be individualized and focus on the duties and responsibilities of each individual Defendant whose acts or omissions are alleged to have caused a constitutional deprivation. *Leer v. Murphy*, 844 F.2d 628, 633 (9th Cir. 1988).  The causation inquiry requires Plaintiff to prove specific facts as to each individual Defendant's alleged violation of his Eighth Amendment rights. *Id*. at 633-34.

16. The nature and extent of Plaintiff's physical injury is in dispute. When witnesses, such as Plaintiff, are not testifying as an expert, testimony in the form of opinions or inferences is limited to those opinions or inferences which are not based on scientific, technical or other specialized knowledge. *See* Fed. R. Evid. 701.  Plaintiff has not identified any medical expert witnesses, and there is nothing in the record indicating that he is qualified as an expert medical witness. In the absence of proof from a medical expert, Plaintiff lacks competent medical expertise to offer opinions or inferences as to the nature and extent of his injury.

(Doc. No. 71 at 5-7.)

**ANY CAUSES OF ACTION OR AFFIRMATIVE DEFENSES NOT EXPLICITLY ASSERTED IN THE PRETRIAL ORDER UNDER POINTS OF LAW AT THE TIME IT BECOMES FINAL ARE DISMISSED AND DEEMED WAIVED.**

**The Court**

The Court points out that Plaintiff's claim in this case alleges that defendants used excessive force while he was a pretrial detainee, therefore violating Plaintiff's rights under the Fourteenth not the Eighth Amendment. (Doc. No. 19). Parties should ensure they understand the differences as well as the interplay between excessive use of force under the Fourteenth Amendment versus excessive use of force under the Eighth Amendment. Parties need to be cautious and make sure they use the appropriate points of law as it relates to Plaintiff's claim of excessive use of force under the Fourteenth Amendment. The Court will consider parties' points of law discussed *supra*. Additionally, parties should consider the following points of law pertaining to using excessive use of force under the Fourteenth Amendment:

1. To determine whether a pretrial detainee's conditions of confinement satisfy the Constitution, courts look to the substantive due process component of the Fourteenth Amendment. *Jones v. Blanas*, 393 F.3d 918, 931-32 (9th Cir. 2004).
2. "[W]hen the state detains an individual on a criminal charge, that person, unlike a criminal convict, may not be punished prior to an adjudication of guilt in accordance with due process of law." *Id*. at 931-32 (internal quotation marks and citation omitted).
3. Individuals have a fundamental right to personal security, "[a]nd that right is not extinguished by lawful confinement." *Youngberg v. Romeo*, 457 U.S. 307, 315 (1982) (citations omitted).
4. To prove that an officer's use of force was constitutionally excessive, "a pretrial detainee must show … that the force purposely or knowingly used against him was objectively unreasonable." *Kingsley v. Hendrickson*, 576 U.S. 389, 396-97 (2015).
5. "A court must make [an objective reasonableness] determination from the perspective of a reasonable officer on the scene, including what the officer knew at the time, not with the 20/20 vision of hindsight." *Id.* at 397. (citation omitted).
6. Although the extent of injury is a factor that may be considered, the absence of significant injury is not determinative. *See Hudson v. McMillian*, 503 U.S. 1, 4, 7 (1992) (holding that serious injury is not necessary to establish excessive force under the Eighth Amendment).

**J.  ABANDONED ISSUES**

None.

**K.  BURDEN OF PROOF**

Plaintiff bears the burden of proof which is by a preponderance of evidence. "[W]hen a party has the burden of proving any claim by a preponderance of the evidence, it means [the jury] must be persuaded by the evidence that the claim is more probably true than not true." 9th Circuit Model Civil Jury Instruction 1.6 (2017) (modified).

**L.  WITNESSES**

1. The following is a list of witnesses that the parties expect to call at trial, including rebuttal and impeachment witnesses. NO WITNESS, OTHER THAN THOSE LISTED IN THIS SECTION, MAY BE CALLED AT TRIAL UNLESS THE PARTIES STIPULATE OR UPON A SHOWING THAT THIS ORDER SHOULD BE MODIFIED TO PREVENT "MANIFEST INJUSTICE." Fed. R. Civ. P. 16(e); Local Rule 281(b)(10).

**Plaintiff's Witnesses**

Plaintiff intends on calling himself and will cross-examine the Defendants' witnesses.

**Defendants' Witnesses**

Tulare County Sheriff Correctional Sergeant Gilbert Rodriguez

Tulare County Sheriff Correctional Deputy Emanuel Garcia

Tulare County Sheriff Correctional Deputy Gary Cook

Tulare County Sheriff Correctional Deputy David Ramirez

Tulare County Sheriff Correctional Deputy Damien Turley

Tulare County Sheriff Correctional Deputy Jose Renteria

Benjamin Mitchell, MBA, Administrative Specialist, County of Tulare HHSA

Julie Hales, Registered Nurse, Corizon Health

Lakeshia James, 800 North G Street, Tulare, CA 93724

Tavion Langley, 800 North G Street, Tulare, CA 93724

////

////

2. **The Court does not allow undisclosed witnesses to be called for any purpose, including impeachment or rebuttal, unless they meet the following criteria**:

    a.    The party offering the witness demonstrates that the witness is for the purpose of rebutting evidence that could not be reasonably anticipated at the pretrial conference, or

    b.    The witness was discovered after the pretrial conference and the proffering party makes the showing required in paragraph B, below.

3.    Upon the post pretrial discovery of any witness a party wishes to present at trial, the party shall promptly inform the Court and opposing parties of the existence of the unlisted witnesses so the Court may consider whether the witnesses shall be permitted to testify at trial. The witnesses will not be permitted unless:

    a.    The witness could not reasonably have been discovered prior to the discovery cutoff;

    b.    The Court and opposing parties were promptly notified upon discovery of the witness;

    c.    If time permitted, the party proffered the witness for deposition; and

    d.    If time did not permit, a reasonable summary of the witness's testimony was provided to opposing parties.

**M.    EXHIBITS, SCHEDULES, AND SUMMARIES**

The following is a list of documents or other exhibits the parties expect to offer at trial. NO EXHIBIT, OTHER THAN THOSE LISTED IN ATTACHMENTS A-C, MAY BE ADMITTED UNLESS THE PARTIES STIPULATE OR UPON A SHOWING THAT THIS ORDER SHOULD BE MODIFIED TO PREVENT "MANIFEST INJUSTICE." Fed. R. Civ. P. 16(e); Local Rule 281(b)(11).

1. **For a party to use an undisclosed exhibit for any purpose, they must meet the following criteria**:

    a.    The party proffering the exhibit demonstrates that the exhibit is for the purpose of rebutting evidence that could not have been reasonably anticipated, or

    b.    The exhibit was discovered after the issuance of this order and the proffering party makes the showing required in paragraph 2, below.

2. Upon the discovery of exhibits after the discovery cutoff, a party shall promptly inform the Court and opposing parties of the existence of such exhibits so that the Court may consider their admissibility at trial. The exhibits will not be received unless the proffering party demonstrates:

   a. The exhibits could not reasonably have been discovered earlier;
   b. The Court and the opposing parties were promptly informed of their existence; and
   c. The proffering party forwarded a copy of the exhibits (if physically possible) to the opposing party. If the exhibits may not be copied the proffering party must show that it has made the exhibits reasonably available for inspection by the opposing parties.

**Plaintiff's Exhibits**

Plaintiff did not identify any exhibits. Plaintiff is permitted to file an amended pretrial statement no later than **October 1, 2022**.

**Defendant's Exhibits**

1. DX 200: Tulare County Sheriff's Incident Report #15-00012934
2. DX 201: Photos in Incident Report #15-00012934
3. DX 202: Jail Surveillance Video of the Incident in Report #15-00012934
4. DX 203: Plaintiff's Citizen's Complaint for the Incident dated July 13, 2016
5. DX 204: Tulare County Sheriff Response to Citizen's Complaint dated August 17, 2016
6. DX 205: Plaintiff's Government Tort Claim for the Incident dated January 5, 2018
7. DX 206: Corizon Health Care Encounter Forms dated December 2015 through January 2016
8. DX 207: Corizon Health Intake and Receiving Screening Form dated December 1, 2015
9. DX 208: Corizon Health Assessment Form dated January 27, 2016
10. DX 209: Tulare County Detention Facility Internal Consultation Form dated January 27, 2016
11. DX 210: Corizon Health Practitioner's Orders Forms dated October 2015 through January 2016
12. DX 211: Corizon Health Services Request Forms dated December 2015
13. DX 212: Corizon Health Refusal of Clinical Services dated December 17, 2015

14. DX 213: Corizon Health Progress Notes dated January 2016

15. DX 214: Plaintiff's Booking Photos and Jackets dated October 13 and December 1, 2015

16. DX 215: Corizon Health Intra-System Transfer Form dated July 13, 2016

17. DX 216: CDCR Medical Intake History, Physical, and Medical Classification dated July 2016

18. DX 217: CDCR Health Care Progress Notes dated August and September 2016

19. DX 218: CDCR Health Care Services Request Forms dated August and September 2016

The parties must exchange exhibits no later than **October 18, 2022.** On or before **November 1, 2022**, counsel **SHALL** meet and confer to discuss any disputes related to the above listed exhibits and to pre-mark and examine each other's exhibits. Any exhibits not previously disclosed in discovery **SHALL** be provided via e-mail or overnight delivery so that it is received by the above exhibit exchange deadline.

1. At the exhibit conference, counsel will determine whether there are objections to the admission of each of the exhibits and will prepare separate indexes; one listing joint exhibits, one listing Plaintiff's exhibits and one listing Defendant's exhibits. In advance of the conference, counsel must have a complete set of their proposed exhibits in order to be able to fully discuss whether evidentiary objections exist. <u>Thus, any exhibit not previously provided in discovery **SHALL** be provided at least five court days in advance of the exhibit conference</u>.

2. At the conference, counsel shall identify any duplicate exhibits, i.e., any document which both sides desire to introduce into evidence. These exhibits **SHALL** be marked as a joint exhibit and numbered as directed above. Joint exhibits **SHALL** be admitted into evidence without further foundation.

All joint exhibits will be pre-marked with numbers preceded by the designation "JT" (e.g. JT/1, JT/2, etc.). Plaintiff's exhibits will be pre-marked with numbers beginning with 1 by the designation PX (e.g. PX1, PX2, etc.). Defendant's exhibits will be pre-marked with numbers beginning with 501 preceded by the designation DX (e.g. DX501, DX502, etc.). The parties SHALL number each page of any exhibit exceeding one page in length (e.g. PX1-1, PX1-2, PX1-3, etc.).

If originals of exhibits are unavailable, the parties may substitute legible copies. If any

document is offered that is not fully legible, the Court may exclude it from evidence.

Each joint exhibit binder shall contain an index which is placed in the binder before the exhibits. The index shall consist of a column for the exhibit number, one for a description of the exhibit and one column entitled "Admitted in Evidence" (as shown in the example below).

**INDEX OF JOINT EXHIBITS**

| EXHIBIT# | DESCRIPTION | ADMITTED IN EVIDENCE |
|---|---|---|
|  |  |  |

3. As to any exhibit which is not a joint exhibit but to which there is no objection to its introduction, the exhibit will likewise be appropriately marked, i.e., as PX1, or as DX501 and will be indexed as such on the index of the offering party. Such exhibits will be admitted upon introduction and motion of the party, without further foundation.

4. Each exhibit binder shall contain an index which is placed in the binder before the exhibits. Each index shall consist of the exhibit number, the description of the exhibit and the three columns as shown in the example below.

**INDEX OF EXHIBITS**

| EXHIBIT# | DESCRIPTION | ADMITTED IN EVIDENCE | OBJECTION FOUNDATION | OBJECTION OTHER |
|---|---|---|---|---|
|  |  |  |  |  |

5. On the index, as to exhibits to which the only objection is a lack of foundation, counsel will place a mark under the column heading entitled "Objection Foundation."

6. On the index, as to exhibits to which there are objections to admissibility that are not based solely on a lack of foundation, counsel will place a mark under the column heading entitled "Other Objections."

7. As to each exhibit which is not objected to in the index, it shall be marked and received into evidence and will require no further foundation.

After the exhibit conference, Plaintiff and counsel for the defendants **SHALL** develop four

complete, legible sets of exhibits.  The parties **SHALL** deliver three sets of their exhibit binders to the Courtroom Clerk and provide one set to their opponent, no later than 4:00 p.m., on **November 10, 2022.** Counsel **SHALL** determine which of them will also provide three sets of the joint exhibits to the Courtroom Clerk.

       7.      The Parties **SHALL** number each page of any exhibit exceeding one page in length.

**N.    POST-TRIAL EXHIBIT RETENTION**

       Counsel who introduced exhibits at trial **SHALL** retrieve the original exhibits from the courtroom deputy following the verdict in the case. The parties' counsel **SHALL** retain possession of and keep safe all exhibits until final judgment and all appeals are exhausted.

**O.    DISCOVERY DOCUMENTS[1]**

       The following is a list of discovery documents – portions of depositions, answers to interrogatories, and responses to requests for admissions – that the parties expect to offer at trial. NO DISCOVERY DOCUMENT, OTHER THAN THOSE LISTED IN THIS SECTION, MAY BE ADMITTED UNLESS THE PARTIES STIPULATE OR UPON A SHOWING THAT THIS ORDER SHOULD BE MODIFIED TO PREVENT "MANIFEST INJUSTICE."  Fed. R. Civ. P. 16(e); Local Rule 281(b)(12).

      **Plaintiff's Documents**

      Plaintiff did not identify any discovery documents.

      **Defendant's Documents**

      1.      Deposition of Lakeshia James, taken September 9, 2019 by Tulare County Counsel

      2.      Deposition of Tavion Langley, taken September 9, 2019 by Tulare County Counsel

**P.    FURTHER DISCOVERY OR MOTIONS**

       No further discovery is sought by either party.

**Q.    STIPULATIONS**

       Plaintiff does not identify any stipulation.

---

[1] The parties **SHALL** identify to their opponent the specific documents they intend to use at trial. Identifying "discovery responses" or "responses to interrogatories" is insufficient **unless** the documents will be used **only** for impeachment.

Defendants offer to stipulate to the "undisputed facts" listed in Section V of Defendants' Pre-Trial Statement, and to the admission of Defendants' exhibits listed in Section XII of Defendants' Pre-Trial Statement.

**R.     AMENDMENTS/ DISMISSALS**

None.

**S.     SETTLEMENT NEGOTIATIONS**

On November 8, 2018, Plaintiff filed notice indicating an early settlement conference might resolve the action. (Doc. No. 28). On December 6, 2018, the Court referred to matter to the post-screening ADR project and issued a 90-day stay. (Doc. No. 29). On December 18, 2018, Defendants filed notice indicating an early settlement conference was not likely to resolve the action. (Doc. No. 30). On January 16, 2019, the Court lifted the stay and directed the Clerk of the Court to issue a discovery and scheduling order. (Doc. No. 31 [minute order]).

Plaintiff did not address settlement negotiations. Defendants indicate the parties are not presently engaged in settlement negotiations. On May 12, 2022, both parties indicated at the final pretrial conference that an additional settlement conference would not be a productive use of judicial resources. Further, in the status report filed August 5, 2022, Defendants indicated their continued belief that a settlement conference in this matter would not be productive.

**T.     AGREED STATEMENT**

Plaintiff did not address an agreed statement. Defendants indicate there are no agreed statements between the parties. The Court has drafted the following neutral statement of the case to be read to the prospective jurors:

> Plaintiff claims that while he was a pretrial detainee at the Tulare County Pre-Trial Adult Facility, Defendants Garcia and Cook used excessive force against him while removing Plaintiff from his cell. Plaintiff claims Defendants Garcia and Cook caused him serious injury. Defendants Garcia and Cook deny they used excessive force in removing Plaintiff from his cell.

The parties are directed to raise any objection to this neutral statement of the case in any objections they file to this tentative Pretrial Order.

**U.     SEPARATE TRIAL OF ISSUES**

Plaintiff did not address or seek a separate trial of issues. Defendants do not request a separate

trial of any issues.

### V. APPOINTMENT OF IMPARTIAL EXPERTS

Plaintiff did not address or seek the appointment of impartial experts. Defendants state neither party has requested the use of impartial experts.

### W. ATTORNEYS' FEES

Plaintiff, who is proceeding *pro se*, is not entitled to attorney's fees. *Kay v. Ehrler*, 499 U.S. 432, 435 (1991).

Defendants state they are not requesting attorney's fees in this action.

### X. HANDLING OF TRIAL EXHIBITS

If Defendants are required to disclose information concerning financial status, Defendants will request that the Court issue a protective order concerning this information, under Local Rule 141.1(b)(2).

### Y. TRIAL DATE/ ESTIMATED LENGTH OF TRIAL

Jury trial is set for **November 15, 2022**, at 8:30 a.m. before the Honorable Helena Barch-Kuchta or the to be appointed Bakersfield Judge in Courtroom 6 of the Robert E. Coyle Federal Courthouse, 2500 Tulare Street, Fresno, California. Trial is expected to last 2-3 days.

### Z. TRIAL PREPARATION AND SUBMISSIONS

#### 1. Trial Briefs

The parties are relieved of their obligation under Local Rule 285 to file trial briefs. If any party wishes to file a trial brief, they must do so in accordance with Local Rule 285 and be filed on or before **October 31, 2022**.

#### 2. Jury Voir Dire

The parties are required to file their proposed voir dire questions, in accordance with Local Rule 162.1, on or before **October 31, 2022**.

#### 3. Jury Instructions & Verdict Form

Defendants SHALL file proposed jury instruction as provided in Local Rule 163 no later than **October 31, 2022**. At the same time, the defense SHALL lodge via e-mail a copy of the joint jury instructions and joint verdict form, in Word format, to HBKOrders@caed.uscourts.gov. If Plaintiff

wishes to file proposed jury instructions or object to those proposed by Defendants, he must do so no later than **November 7, 2022**.  In selecting proposed instructions, the parties shall use Ninth Circuit Model Civil Jury Instructions or California's CACI instructions to the extent possible.  All jury instructions and verdict forms shall indicate the party submitting the instruction or verdict form (i.e., joint, plaintiff's, defendant's, etc.), the number of the proposed instruction in sequence, a brief title for the instruction describing the subject matter, the **complete** text of the instruction, and the legal authority supporting the instruction.  Each instruction **SHALL** be numbered.

### AA. OBJECTIONS TO PRETRIAL ORDER

Any party may, within 14 days after the date of service of this Order, file and serve written objections to any of the provisions set forth in this order. Each party is also granted 7 days thereafter to respond to the other party's objections.  Such objections shall clearly specify the requested modifications, corrections, additions, or deletions.  If no objections are filed, the order will become final without further order of this Court.

The parties are reminded that pursuant to Rule 16(e) of the Federal Rules of Civil Procedure and Local Rule 283 of this Court, this order shall control the subsequent course of this action and shall be modified only to prevent manifest injustice.

### BB. MISCELLANEOUS MATTERS

None.

### CC. COMPLIANCE

Strict compliance with this order and its requirements is mandatory.  All parties and their counsel are subject to sanctions, including dismissal or entry of default, for failure to fully comply with this order and its requirements.

Dated:   August 23, 2022

HELENA M. BARCH-KUCHTA
UNITED STATES MAGISTRATE JUDGE